```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                     FORT MYERS DIVISION

NOAH TECHNOLOGIES, INC. and
DANIEL FISH,

        Plaintiffs,

v.                                Case No: 2:14-cv-325-FtM-29DNF

DAVID     RICE,    CAROL
STRACKBEIN,    and    RICE
TECHNOLOGY, LLC,

        Defendants.
_____
```

**OPINION AND ORDER**

This matter comes before the Court on review of Defendants' Motions to Dismiss the Amended Complaint (Doc. ##24-25) filed on August 8, 2014. Plaintiff filed a Response (Doc. #26) on August 18, 2014. For the reasons set forth below, the motions are granted and Plaintiff Daniel Fish is given leave to file a Second Amended Complaint.

**I.**

Plaintiffs Noah Technologies, Inc. (Noah) and Daniel Fish (Fish) have filed a twelve-count Amended Complaint (Doc. #23) against Defendants David Rice (Rice), Carol Strackbein (Strackbein), and Rice Technology, LLC (Rice Technology) stemming from Defendants' alleged misappropriation of a patent and other assets belonging to Noah, a company co-founded by Fish and Rice.

The underlying facts, as set forth in the Amended Complaint, are as follows:

In 2006, Fish obtained a patent for an electronic system to detect water leaks and prevent water damage to buildings. In 2010, Fish and Rice began development of a design to improve upon Fish's system by creating a smaller and more accurate water detection sensor. (Id. at ¶ 43.) Thereafter, Fish and Rice created Noah as a partnership and named their product the Intelli-Sensor. Rice filed a provisional patent application for the Intelli-Sensor on behalf of Noah on May 27, 2010. (Id. at ¶ 49.) While the provisional patent application was pending, Fish and Rice both worked for Noah. Fish worked to find customers and install the Intelli-Sensor systems while Rice worked to perfect the Intelli-Sensor and handled the logistics required for large-scale manufacturing. During this time, Fish paid for the vast majority of Noah's expenses because Rice did not have the financial resources to cover his proportionate share. (Id. at ¶ 51.) On May 20, 2011, Noah filed a non-provisional patent application for the Intelli-Sensor, pursuant to which United States Patent #8,508,373 (the Patent) was issued on August 13, 2013. The Patent was issued in the sole name of Rice. (Id. at ¶¶ 62-63.)

On January 15, 2012, Fish and Rice incorporated Noah pursuant to the laws of Florida. Rice became President of Noah, Fish became Vice President, Mary Ratliff (Ratliff) became Treasurer, and

2

Strackbein became Secretary. Noah's board of directors was comprised of the individuals listed in its articles of incorporation. (Id. at ¶¶ 54-55.) Although Rice never assigned the Patent to Noah, he repeatedly stated in business presentations that the Patent belonged to Noah. (Id. at ¶ 63.)

In 2013, Noah applied for and was awarded a $50,000 grant offered by the Milwaukee Water Council (the Water Council). The grant required Noah to establish an office in the same building as the Water Council. Noah obtained a lease and outfitted the office space. (Id. at ¶ 65.) In early 2014, Rice misrepresented to the Water Council that Noah had changed its name to Rice Technology and requested that the final $15,000 grant payment be issued to Rice Technology instead of Noah. (Id. at ¶¶ 69-74.) The Water Council complied. In March 2014, when confronted by Fish, Rice admitted that he had "taken" the $15,000 payment. (Id.) During the same time period, Fish learned that Rice had converted Noah's office at the Water Council to an office for Rice Technology; that Rice had assigned the Patent to Rice Technology; that Rice Technology had begun marketing a product known as the Leak Shark that used the same technology (i.e., the Patent) as the Intelli-Sensor; that Rice had diverted an estimated $7,000,000 in contracts from Noah to Rice Technology; and that Strackbein had withdrawn all the funds (approximately $22,000) from Noah's corporate account. (Id. at ¶¶ 69-82.)

Based on these allegations, Fish, directly and derivatively on behalf of Noah, brings causes of action for a judgment that Fish is the inventor of the Patent (Count I); breach of fiduciary duty against Rice (Counts II and IV-VIII); breach of contract against Rice (Count III); civil theft against Rice (Count IX); breach of fiduciary duty against Strackbein (Counts X-XI); and civil theft against Strackbein (Count XII).

Defendants now move to dismiss the Amended Complaint. Rice and Strackbein argue (1) that Fish's derivative claims are improperly pled because derivative actions against a corporation's directors must include the corporation as a defendant, not a plaintiff; (2) that Fish improperly combines derivative claims and personal claims in the same lawsuit; and (3) that Fish failed to verify that demand was made upon Noah's board prior to filing the derivative claims. Additionally, Rice Technology argues (1) that the Court lacks personal jurisdiction over it; and (2) that none of the counts in the Amended Complaint are asserted against Rice Technology. Fish responds that all counts are properly pled and that the Court has personal jurisdiction over Rich Technology as an alter-ego of Rice.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

4

This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### III.

### A. Proper Pleading of a Derivative Action

Rice and Strackbein argue that Fish's derivative causes of action must be dismissed because, at the outset of a derivative case, the subject corporation must be named as a defendant, not a plaintiff. Fish responds that, given the nature of the claims at issue, Noah is properly considered a plaintiff and, accordingly, the case may proceed as initially pled.

In a stockholder's derivative suit, the plaintiff stockholder "is at best the nominal plaintiff" because "[t]he corporation is the real party in interest even though the corporate management has failed to pursue the action." Liddy v. Urbanek, 707 F.2d 1222, 1224 (11th Cir. 1983) (quoting Ross v. Bernhard, 396 U.S. 531, 538 (1970)). "But as a practical matter, the corporation is initially named as a defendant. In this way the stockholder insures the presence of the corporation as an indispensable party. Once joined and present before the court, the corporation is then realigned, if necessary, according to its real interests." Id.; see also Duffey v. Wheeler, 820 F.2d 1161, 1163 (11th Cir. 1987) ("[R]etaining the corporation as a party defendant in a shareholder's derivative action is an exception to the general

6

rule that the corporation is properly realigned as a plaintiff since it is the real party in interest.").

If Noah was properly present before the Court, the Court would be amenable to Fish's argument that he ought not be required to re-plead Noah as a defendant given that the allegations in the Amended Complaint suggest that Noah's real interest in this suit is as a plaintiff. However, that is not the case. There is no assertion in the Amended Complaint or elsewhere that Fish has the authority to take legal action on Noah's behalf. Indeed, according to the Amended Complaint, Fish owns only a 40% stake in Noah and serves as its Vice President, neither of which suggest that Fish is authorized to cause Noah to initiate a lawsuit. Of course, as Fish has done here, a minority stockholder may instead bring derivative causes of action asserting the claims belonging to the corporation. However, in order to do so, the corporation must be named initially as a defendant so that it can be made present before the Court. See Liddy, 707 F.2d at 1224. Accordingly, Fish's derivative causes of action (Counts II and IV-XII) are dismissed without prejudice to refiling with Noah named as a defendant. In anticipation that Fish will file a Second Amended Complaint making this correction, the Court will also address the additional grounds for dismissal raised by Defendants.

**B.    Failure to Demand that Noah Take Action**

Rice and Strackbein argue that Fish's derivative causes of action must be dismissed because Fish failed to demand that Noah's board of directors take action to address the issues raised in the Amended Complaint, which is a prerequisite to filing a derivative claim.  The law of the state of incorporation governs the extent of any demand requirement in a derivative action.  See Kamen v. Kemper Fin. Servs., 500 U.S. 90, 108-09 (1991); Stepak v. Addison, 20 F.3d 398, 402 (11th Cir. 1994).  Noah is incorporated under the laws of the State of Florida, which require:

> A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made to obtain action by the board of directors and that the demand was refused or ignored by the board of directors for a period of at least 90 days from the first demand unless, prior to the expiration of the 90 days, the person was notified in writing that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

Fla. Stat. § 607.07401(2).  Failure to make the required demand is an absolute bar to filing a derivative action against a Florida corporation.  See Kamen, 500 U.S. at 102 n.7.

Here, Fish alleges that Rice and Strackbein are directors of Noah and that he demanded that Rice and Strackbein take action to address the allegations raised in the Amended Complaint.  (Doc. #23, ¶¶ 18-19, 86.)  However, Fish does not allege that a separate demand was made upon Noah's board of directors, nor does he allege

8

that Noah's board of directors is comprised solely of himself, Rice, and Strackbein such that his demand upon Rice and Strackbein was in actuality a demand upon the board. Accordingly, Fish's derivative causes of action (Counts II and IV-XII) are also subject to dismissal on this ground.

**C.   Combining a Derivative Action with an Individual Action**

Rice and Strackbein argue that Florida law precludes Fish from bringing both direct and derivative causes of action in the same suit. See, e.g., Haas v. Roe, 696 So. 2d 1254, 1255 (Fla. 2d DCA 1997) (collecting cases). Fish argues that those cases are irrelevant because they concern the proper joinder of actions under the Florida Rules of Civil Procedure. According to Fish, the Court must instead follow the relevant Federal Rule of Civil Procedure, Rule 20(a)(1), which contains no such bar.

While Fish is correct that the Federal Rules of Civil Procedure do not categorically bar a plaintiff from bringing both direct and derivative claims, Rule 23.1 does state that a plaintiff may not maintain a derivative action if the plaintiff "does not fairly and adequately represent the interests" of the corporations' shareholders. Fed. R. Civ. P. 23.1(a). This requirement "is designed to ensure that a stockholder bringing suit derived from the corporation's interest will assume strict fiduciary responsibilities." First Am. Bank & Trust v. Frogel,

726 F. Supp. 1292, 1297 (S.D. Fla. 1989) (internal quotation omitted).

Courts interpreting this requirement have held that a plaintiff cannot maintain a derivative action if the plaintiffs' interests conflict with the interests of the corporations' shareholders. See, e.g., Larson v. Dumke, 900 F.2d 1363, 1367 (9th Cir. 1990) ("An adequate representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class."); Davis v. Comed, Inc., 619 F.2d 588, 593 (6th Cir. 1980) (plaintiff cannot maintain a derivative action if his interests "are actually inimical to those he is supposed to represent fairly and adequately").  Likewise, the Supreme Court has held that Rule 23's nearly identical requirement that a class action plaintiff must "fairly and adequately protect the interests of the class" means that a plaintiff cannot bring such a claim if his individual interests conflict with the interest of those he seeks to represent.  Sosna v. Iowa, 419 U.S. 393, 403 (1975); see also Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987) (The inquiry into whether named plaintiffs satisfy the adequacy requirement involves "whether plaintiffs have interests antagonistic to those of the rest of the class.") (quoting Griffin v. Carlin, 755 F.2d 1516, 1532 (11th Cir. 1985)); Drayton v. W. Auto Supply Co., No. 01-10415, 2002 WL 32508918, at *5 (11th Cir.

Mar. 11, 2002) ("To determine the adequacy of Appellees, it is necessary to examine whether . . . the class representatives have common interests with the unnamed members of the class . . . .").

Here, in Count I, Fish brings a direct cause of action seeking a judgment that he is the sole inventor of the Patent. Similarly, in Count III, Fish brings a direct cause of action against Rice for breach of contract for not assigning the Patent to Noah. As relief for Counts I and III, Fish seeks an order assigning *him* "all right, title, and interest" in the Patent. In Counts II and IV-VII, Fish brings derivative claims on behalf of Noah for breach of fiduciary duty against Rice. Those counts seek an order assigning *Noah* "all right, title, and interest" in the Patent. Thus, in separate counts, both Fish and Noah seek "all right, title, and interest" in the Patent. Therefore, in order to avoid having to share ownership of the Patent with the other Noah shareholders, Fish is incentivized to prioritize his personal claims at the direct expense of the derivative claims. Accordingly, the Court concludes that Fish cannot "fairly and adequately represent the interests" of Noah's shareholders and, therefore, Counts II and IV-VII are also subject to dismissal on this ground.[1]

---

[1] Fish's remaining derivative causes of action (Counts VIII-XII) are not subject to dismissal on this ground because they do not seek an assignment of the Patent and, therefore, present no conflict of interest at this time.

**D.    Personal Jurisdiction over Rice Technology**

Rice Technology is a limited liability company formed under the laws of the state of Wisconsin. (Doc. #23, ¶ 15; Doc. #26, p. 2).  The Complaint does not contain any allegations concerning Rice's citizenship.  However, as the Complaint asserts that the Court has jurisdiction over Rice via the application of Florida's long-arm statute (Doc. #23, ¶ 16), the Court assumes that Plaintiffs agree with Rice that he is not citizen of Florida.  Rice Technology argues that all claims against it must be dismissed because Plaintiffs have failed to allege the Court has personal jurisdiction over Rice Technology.  Plaintiffs respond that the Court has personal jurisdiction over Rice Technology via the application of the alter ego exception to Florida's long-arm statute.

The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).  A prima facie case is established if the plaintiff alleges enough facts to withstand a motion for directed verdict.  SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997) (citation omitted).  "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." Fraser v.

12

Smith, 594 F.3d 842, 846 (11th Cir. 2010) (quoting Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008).

Florida's long-arm statute provides for the exercise of personal jurisdiction over "[a] defendant who is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). A limited exception, known as the "alter ego theory," provides that "a nonresident shareholder of a corporation doing business in Florida may be subject to long-arm jurisdiction if the alter ego test can be met." WH Smith, PLC v. Benages & Assocs., 51 So. 3d 577, 581 (Fla. 3d DCA 2010) (quoting Aldea Communs., Inc. v. Gardner, 725 So. 2d 456, 457 (Fla. 2d DCA 1999). "To establish jurisdiction under the alter ego theory, the plaintiff's pleading must set forth sufficient jurisdictional allegations to pierce the corporate veil of the resident corporation." Id. "The corporate veil cannot be pierced unless the plaintiff can establish *both* that the corporation is a 'mere instrumentality' or alter ego of the defendant, *and* that the defendant engaged in 'improper conduct' in the formation or use of the corporation." Id. (quoting Bellairs v. Mohrmann, 716 So.2d 320, 322 (Fla. 2d DCA 1998) (emphasis in original).

Here, Plaintiffs seek to apply the alter ego theory to Rice Technology via a two-step process. First, they apply Florida's long-arm statute to Rice, asserting that the Court has personal

jurisdiction over Rice by virtue of the fact that he served as an officer and director of Noah, which conducted extensive business in Florida. Then, assuming long-arm personal jurisdiction over Rice, Plaintiffs assert that the Court has personal jurisdiction over Rice Technology under a "reverse" alter ego theory because Rice operates Rice Technology as his alter ego for the improper purpose of misappropriating Noah's assets.

While Plaintiffs are correct that Florida courts have applied the "reverse alter ego" theory to pierce the corporate veil in non-jurisdictional contexts, see, e.g., Braswell v. Ryan Invs., Ltd., 989 So. 2d 38, 40 (Fla. 3d DCA 2008) (collecting cases), Plaintiffs do not cite, and the Court is not aware of, any cases in which the reverse alter ego theory has been applied to assert jurisdiction over a non-resident *corporation* via a resident *individual*. Nor is the Court aware of any cases holding that the Florida resident required for alter-ego jurisdiction may be replaced by a non-resident who is only within Florida's jurisdiction via a separate application Florida's long-arm statute.[2] Accordingly, the Court concludes that all causes of action against Rice Technology are also subject to dismissal

---

[2] Likewise, there is no case law supporting Plaintiffs' argument that personal jurisdiction is not required for causes of action brought pursuant to 35 U.S.C. § 256. To the contrary, the court in Krauser v. Evollution IP Holdings, Inc., 975 F. Supp. 2d 1247, 1261 (S.D. Fla. 2013) dismissed a 35 U.S.C. § 256 cause of action for lack of personal jurisdiction.

because Plaintiffs have not adequately alleged personal jurisdiction.

Accordingly, it is now

**ORDERED:**

Defendant's Motions to Dismiss the Amended Complaint (Docs. ##24-25) are **GRANTED** and the Amended Complaint is **dismissed without prejudice** to filing a Second Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this ___18th___ day of November, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies: Counsel of record